UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| KAREN LYNN JACKSON,<br><br>               Petitioner,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security<br>Administration,<br><br>               Respondent. | Case No. 2:17-cv-00406-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Karen Lynn Jackson's Petition for Review of the Respondent's denial of social security benefits, filed on September 29, 2017. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on October 4,

2013. This application was denied initially and on reconsideration, and a hearing was conducted on February 24, 2016, before Administrative Law Judge (ALJ) R. J. Payne. After considering testimony from Petitioner, medical expert Lynne Jahnke, M.D., and a vocational expert, ALJ Payne issued a decision on April 14, 2016, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request on August 4, 2017.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of May 17, 2013, Petitioner was fifty-seven years of age. Petitioner obtained a master's degree in special education, and her past relevant work experience includes work as a clinical therapist.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of May 17, 2013. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's migraine headaches, degenerative disk disease of the lumbar spine, fibromyalgia, and benign positional vertigo severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed

impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments. The ALJ did not identify which listing or listings he considered. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and next determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined Petitioner retained the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), with limitations. He found she could sit without limit; stand and walk up to four hours total in any combination; never climb ropes, ladders or scaffolds; and that she should avoid concentrated exposure to temperature extremes of heat and cold, industrial vibrations, and hazardous machinery; and avoid all exposure to unprotected heights. He determined that she could lift up to twenty pounds occasionally, and lift or carry ten pounds frequently.

In determining Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms she alleged, but that her statements about the intensity, persistence, and limiting effects of her conditions "were not entirely consistent with the medical evidence and other evidence in the record…." (AR 24.) First, the ALJ determined that the "objective medical evidence does not support the level of impairment claimed," because there was no objective evidence to support her claims of numbness and balance issues. Specifically, the ALJ found that a review of the medical evidence "shows that the doctors have not reported detecting numbness or weakness on examination, and her nerve conduction study was normal." (AR 25.) The ALJ discounted

the opinion of Dr. Dustin Dinning, Petitioner's treating physician, and her physical therapist, Chadwick Romano, instead assigning "great weight" to the opinion of medical expert Lynne Jahnke, M.D., who testified at the hearing.

At step four, the ALJ found Petitioner was able to perform her past relevant work as a clinical therapist. Because Petitioner did not demonstrate an inability to perform past relevant work, the ALJ did not reach step five. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where

the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**DISCUSSION**

Petitioner argues the ALJ erred at steps three and four. Petitioner asserts the ALJ did not consider whether Petitioner's impairments equaled a listing at step three. Pet. Brief at 11. Next, Petitioner maintains the ALJ erroneously discounted the opinion of Dr. Dustin Dinning, Petitioner's treating physician, by failing to evaluate Petitioner's fibromyalgia under the appropriate diagnostic criteria required by SSR 12-2P. *See* 2012 WL 3104869 (S.S.A. July 25, 2012). And last, Petitioner argues the ALJ's failure to consider and evaluate Petitioner's pain and vertigo under SSR 16-3P, 2016 WL 1119029 (S.S.A. Mar. 16, 2016), resulted in an inaccurate RFC that failed to account for all of Petitioner's medically determinable impairments and their effect as a whole on Petitioner's capacity to perform work. Petitioner asks the Court to reverse the ALJ's decision and remand for an award of benefits.

1.      **Step Three: Meet or Equal a Listing**

If the claimant satisfies the criteria under a listing and meets the twelve-month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing evidence that she has a medically severe

impairment or combination of impairments that meet or equal a particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or otherwise, as to how her combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

Fibromyalgia is not a listed impairment. Accordingly, the ALJ must determine whether fibromyalgia "medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2P, 2012 WL 3104869 at *6.[1]

Petitioner asserts the ALJ failed to consider whether Petitioner's impairments medically equaled a listing at all. Pet. Brief at 11. Respondent did not address this issue in its response brief.[2]

---

[1] SSR 12-2P became effective July 25, 2012. 2012 WL 3104869.

[2] Petitioner did not present a robust argument, as this error was mentioned in the concluding section of Petitioner's brief. However, the minimal analysis does not prevent the Court from considering the issue given Petitioner raised it as a possible error. Further, it is unclear from the record whether this issue was waived below, or preserved for appeal. At the conclusion of the hearing, the ALJ asked Petitioner's attorney, "Did you stipulate in the listings none met or equaled?" (AR 79.) Petitioner's attorney answered, "yes," but it is not clear whether the stipulation was that Petitioner did not meet a listing, or that her impairments were not equivalent to a listing. (AR 79.) Moreover, during the hearing, the ALJ did not engage the medical expert in an analysis of listing equivalency, and in his written opinion, the ALJ did not note that the issue had been affirmatively waived. Accordingly, because Petitioner raised the issue in her opening brief, the Court will address it, especially given the directive in SSR 12-2P requires the ALJ to affirmatively consider listing equivalency when presented with a claimant suffering from fibromyalgia.

At the hearing, the medical expert was asked whether she believed Petitioner's "conditions, either singularly or in combination, would meet or equal any of the listings of impairments," to which she answered, "No," without any explanation. Apparently in reliance on the testifying medical expert's answer, the ALJ made this finding as to equivalence:

> The claimant's physical impairments, considered both separately and in combination, are not severe enough to meet or medically equal one of the listed impairments. Nor has any treating or examining physician found the claimant to have a listing level impairment. In addition, the medical expert, Lynne Jahnke, M.D., reviewed the medical record and testified that the claimant's impairments did not meet or equal a listing.

(AR 23.)

The ALJ's finding is insufficient to demonstrate that he actually considered equivalence. The United States Court of Appeals for the Ninth Circuit requires that, "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). In other words, "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet or equal a listed impairment. *Lewis*, 236 F.3d at 512 (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).

Applying this standard to the ALJ's findings here, the conclusory statement that

Petitioner did not equal "any" listing was insufficient. Further, that none of Petitioner's treating or examining physicians failed to so find is not the standard. It is the responsibility of the ALJ to properly consider equivalence at step three. *See Marcia*, 900 F.2d at 176 (explaining that the secretary is in a better position to evaluate the medical evidence for a proper consideration of step three equivalence). And last, it was improper to rely upon the medical expert's conclusory evaluation, given she offered no analysis of medical equivalence to any listed impairment, contrary to the directive in *Marcia* and in SSR 12-2P. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (wherein the medical expert thoroughly discussed the characteristics of Listing 1.03 before concluding the claimant did not meet the listed impairment).

Based upon this error alone, it would be appropriate for the Court to remand this matter. *Marcia*, 900 F.2d at 176. However, because other identified issues on review raise questions regarding the adequacy of the ALJ's assessment of fibromyalgia-related symptoms pursuant to SSR 12-2P, and it is not clear whether the issue of listing equivalency at step three was waived, *see* note 2, supra, the Court will discuss these issues. *See Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).

**2.     Whether the ALJ Improperly Weighed the Medical Opinion Evidence**

Petitioner argues the ALJ erred in giving only "some weight" to the opinion of Dr. Dinning, Petitioner's treating physician, based upon his finding that the opinion lacked support from the evidence in the record. Specifically, Petitioner contends that the ALJ improperly evaluated Dr. Dinning's opinion regarding the disabling effects of Petitioner's

fibromyalgia, because the ALJ did not properly evaluate the diagnostic criteria in SSR 12-2P. Respondent argues the ALJ properly rejected Dr. Dinning's "extreme opinions" because they were not supported by the record, but nonetheless accepted the diagnosis of fibromyalgia and included credible limitations in the RFC assessment.

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2P, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted").

ALJs generally give more weight to medical opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citation omitted); *see also* SSR 96-2P, at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). However, "[t]he ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Dr. Dinning, a specialist in rheumatology, treated Petitioner from January 28, 2014, through January 11, 2016. He completed a fibromyalgia Medical Source Statement on March 11, 2014 (AR 368-377, 388, 447) and on November 5, 2014 (AR 437-442). In both assessments, Dr. Dinning assessed that Petitioner would have the ability to sit for a total of two hours during an eight hour day; stand two hours during an eight hour day; walk one hour during an eight hour day; would need to take frequent breaks and lie down during the day; would have difficulty with pain and fatigue; would have difficulty grasping and twisting objects; would not have the ability to work for eight hours a day, five days a week, with normal breaks; and would miss work more than four days per month.

The ALJ stated three reasons for assigning only "some weight" to Dr. Dinning's findings of extreme limitations to Petitioner's activity levels. First, the AJL noted there was no record of Dr. Dinning "actually doing the testing for fibromyalgia or confirming limitations," and that Dr. Dinning often recorded that Petitioner's musculoskeletal exam was normal. Second, the ALJ noted that Dr. Dinning reported fine motor limitations, but there was no neurological confirmation of these limitations. And last, the ALJ noted Dr. Dinning reported Petitioner had cognitive impairments, but cognitive testing performed by Gerald Gardner, Ph.D., was "normal." In sum, the ALJ concluded that Dr. Dinning's opinion "departs substantially from the rest of the evidence of record," rendering it less

persuasive. Instead, the ALJ gave the testimony of Dr. Jahnke, the testifying medical expert, and the opinions of the state agency reviewing physicians, none of whom either examined or treated Petitioner, more weight.

The Court finds the ALJ failed to offer specific and legitimate reasons for giving little weight to Dr. Dinning's opinion. In particular, it appears the ALJ, and the testifying medical expert Dr. Jahnke, fundamentally misunderstood the nature of fibromyalgia symptoms and how the disease was diagnosed by Dr. Dinning. The ALJ's rejection of Dr. Dinning's opinion is based upon the lack of objective findings—whether it was lack of testing or normal objective exam findings. Accordingly, it is helpful to understand what fibromyalgia is, how it is diagnosed, and what symptoms accompany the disease.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id*. at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, FIBROMYALGIA SYNDROME: BLUEPRINT FOR A RELIABLE DIAGNOSIS, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id*. (quoting Yunus, supra, at 1260). Indeed, "[t]here is an absence of

symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id*. The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id*.

For a long time, fibromyalgia was "poorly understood within much of the medical community." *Id*. And, "[t]here used to be considerable skepticism that fibromyalgia was a real disease." *Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1137 (7th Cir. 2017). In previous decisions, the Court of Appeals for the Ninth Circuit was reluctant to recognize fibromyalgia as an impairment that could render one disabled for Social Security purposes. *Revels v. Berryhill*, 874 F.3d 648, 656–57 (9th Cir. 2017) (citing *Rollins*, 261 F.3d at 857 ("Assuming, without deciding, that fibromyalgia does constitute a qualifying 'severe impairment' under the Act ....")).

In 2012, the SSA issued a ruling recognizing fibromyalgia as a valid "basis for a finding of disability." SSR 12-2P, at *2. The ruling provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. *Id*. Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) he or she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) he or shee has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain. *Id*. at *2–3.

Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) he or she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) he or she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain. *Id*. at *3.

Therefore, a diagnosis of fibromyalgia does not rely on X-rays or MRIs, or other objective tests. Further, SSR 12-2P recognizes that the symptoms of fibromyalgia "wax and wane," and that a person may have "bad days and good days." SSR 12-2P, at *6. Consequently, the ruling warns that, after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider "a longitudinal record whenever possible." *Id*.

Here, the ALJ discredited Dr. Dinning's opinion based upon a lack of objective findings to support Petitioner's fibromyalgia related disabling pain symptoms. This was error. *Tully v. Colvin*, 943 F.Supp.2d 1157, 1165 (E.D. Wash. 2013). Petitioner began her treatment with Dr. David Ramey, who examined Petitioner on August 22, 2013, and again on December 3, 2013. (AR 320, 346.) Dr. Ramey initially had no explanation for Petitioner's subjective complaints of decreased balance, fatigue, diffuse numbness and tingling, muscle spasms, and intermittent pain, and consequently ordered diagnostic testing. This testing included two brain MRIs, blood work, a CT scan, and nerve

conduction studies. (AR 320-322, 584-85, 623, 395.) All tests came back essentially normal. (AR 346.) Nonetheless, Dr. Ramey's December 3, 2013 examination revealed Petitioner presented with an unsteady gait, and occasional speech hesitation, along with subjective complaints that her symptoms were not improving. Therefore, Dr. Ramey decided upon further workup and referrals to other medical specialists.

Dr. Dustin Dinning, a specialist in rheumatology, treated Petitioner from January 28, 2014, to January 11, 2016. (AR 355, 533 – 582.)[3] At her initial consultation with Dr. Dinning on January 28, 2014, Petitioner presented with arthralgias, joint pain, fatigue, tingling, headache and insomnia. (AR 355.) Petitioner described her condition as constant and worsening. At that time, Dr. Dining discussed the symptoms of fibromyalgia with Petitioner. (AR 357.) Thereafter, Dr. Dinning consistently diagnosed Petitioner with fibromyalgia and treated her condition as such. (AR 364 – 365, 533-582.)

It was error for the ALJ to rely upon the lack of objective evidence, such as normal neurological exams and normal cognitive testing in this case, when the record revealed a long history of Petitioner's complaints of diffuse pain, fatigue, and balance problems reported over time to multiple medical practitioners. (AR 26.) Objective tests are administered to rule out other diseases and alternative explanations for the pain, but do not establish the presence or absence of fibromyalgia, as fibromyalgia cannot be objectively detected. *Tully v. Colvin*, 943 F. Supp. 2d 1157, 1165 (E.D. Wash. 2013).

---

[3] Petitioner had established care with Kootenai Clinic, where Dr. Dinning maintained his practice, in August of 2013. (AR 583.) Petitioner saw several practitioners at Kootenai Clinic, including Dr. Ramey and Dr. Andrea Dinning.

Here, Petitioner's fibromyalgia was undisputed. Petitioner's treating rheumatologist and the other medical professionals who treated or examined her, such as Dr. Ramey, Dr. Andrea Dinning, Dr. David Gillman,[4] and Chadwick Romano, P.T., acknowledged she had fibromyalgia. (AR 26.) The ALJ's determination that Dr. Dinning's opinions deserved less weight because there were no objective findings to support his opinions was legal error.

Next, the ALJ erroneously concluded that Dr. Dinning's examinations revealed normal musculoskeletal findings. (AR 26.) This conclusion is not supported by the record. For instance, during an examination on April 1, 2015, examination of Petitioner by Dr. Dinning revealed abnormal findings with regard to Petitioner's cervical, thoracic, and lumbar spine, and with Dr. Dinning noting pain and muscle spasm in those areas while other musculoskeletal exam findings were noted as normal. (AR 26, 546.) Similarly, the ALJ described Dr. Dinning's musculoskeletal examination findings as normal on May 27, 2015, (AR 26), but Dr. Dinning's examination that day noted Petitioner was in pain, appeared chronically ill, and upon examination Dr. Dinning noted soft tissue discomfort in the left posterior shoulder, right posterior shoulder, upper back, low back, right lateral epicondyle, left lateral epicondyle, left posterior thigh, right posterior thigh, right knee, and left knee. (AR 552.) Dr. Dinning noted "12 out of 18 total

---

[4] Notably, the ALJ failed to discuss the records pertaining to Dr. Gilman's care and treatment of Petitioner. Dr. Gillman examined petitioner on June 9, 2014, and agreed with Dr. Dinning's and Dr. Ramey's diagnosis of fibromyalgia. (AR 463.) Dr. Gillman's treatment notes from June 14, 2012 through July 23, 2013, reveal Petitioner consistently complained of diffuse pain, balance problems, and fatigue---symptoms associated with fibromyalgia. (AR 284 – 312.)

tender points." *Id.* And the last examination the ALJ relied upon, on January 11, 2016,

Dr. Dinning noted Petitioner was suffering from fatigue, back pain, joint pain, joint

swelling, and insomnia. (AR 26, 577.)

The above evidence in the record renders the ALJ's conclusions that Petitioner had

"normal" musculoskeletal examinations and that there was no record of Dr. Dinning

"actually doing the testing for fibromyalgia or confirming the limitations" wholly

incorrect. Dr. Dinning on May 27, 2015, confirmed the existence of 12 out of 18 total

tender points, and over the course of his treatment, physical examination findings

revealed pain consistent with fibromyalgia symptoms.

The final reason the ALJ gave for giving Dr. Dinning's opinion only "some

weight" was that the opinion departed "substantially from the rest of the evidence of

record." (AR 26.) However, the ALJ's conclusion is not supported by the record as a

whole, and is rooted in an apparent misunderstanding of fibromyalgia. For instance,

physical therapist Chadwick Romano rendered an opinion remarkably consistent with Dr.

Dinning's assessment of Petitioner's functional capacity for sustained work. (AR 389,

487.) Romano observed Petitioner during physical therapy sessions, noting she was

unable to get off the floor without assistance; unable to bend unless supported; possessed

a limited ability to sit/stand for prolonged periods; had a score of 11/24 on a dynamic gait

index, with a risk for falling; and had a below normative range on all conditions upon

performance of a clinical test of sensory integration of balance. (AR 394.) On March 10,

2014, Romano evaluated Petitioner and noted she had been "unable to walk with good

balance or for exercise." (AR 398.)

Despite Romano's personal observations and his administration of objective tests quantifying Petitioner's balance and gait, the ALJ disregarded Romano's opinions "because he is not a doctor and his opinion is not consistent with the record. In addition, he did not provide objective testing to support his opinion." (AR 26.) Yet, his opinions are consistent with those of Dr. Dinning, Petitioner's treating rheumatologist, and he did administer objective tests, as noted above.

To support his conclusion that Dr. Dinning's opinion "departs substantially from the rest of the evidence of record," the ALJ either ignored evidence in the record (such as the records from Dr. Gillman consistently noting Petitioner's complaints of pain), or he discredited each treatment provider's assessment of Petitioner's pain because objective testing was normal. (AR 26.) Dr. Jahnke, the medical expert who testified at the hearing, perpetuated this error by concluding she "did not think the claimant's diagnosis of fibromyalgia was supported by the record….physical exams were normal, and the testing to show fibromyalgia was not done." (AR 25.)[5] Accordingly, there is no support in the record for the reasons the ALJ gave for discrediting Dr. Dinning's opinion regarding Petitioner's ability to sustain work, and no support for the inapposite opinions of Dr.

---

[5] During the exchange between the ALJ and Dr. Jahnke during the hearing, Dr. Jahnke was asked about Dr. Dinning's fibromyalgia questionnaire. Dr. Jahnke indicated that she "did not think the treatment notes supported that," because "nowhere in the record are tender points mentioned that I saw." (AR 45.) However, as mentioned previously, Dr. Dinning's treatment notes from May 27, 2015, confirmed the existence of 12 out of 18 total tender points upon physical examination of Petitioner.

Jahnke, which are contradicted by the record as discussed above.[6]

For the above reasons, the Court finds that the ALJ discounted the opinion of Dr. Dinning without providing specific and legitimate reasons supported by substantial evidence in the record. This error is harmful and requires remand.

## 3.    Petitioner's RFC

As part of the fourth step in the sequential process, the ALJ assesses whether the Petitioner's medically determinable impairments prevent the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. The ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*,

---

[6] Although not raised in Petitioner's brief, the ALJ must reassess Petitioner's credibility based upon the Court's conclusion. The ALJ discredited Petitioner because the "objective medical evidence does not support the level of impairment claimed." (AR 24.) The ALJ discredited Petitioner's accounts of disabling pain and balance problems because there was no objective medical evidence. (AR 25.) However, because the ALJ improperly evaluated the medical evidence, it was therefore error to discredit Petitioner's subjective complaints of pain based upon the improper evaluation of the medical evidence.

240 F.3d 1157, 1163–64 (9th Cir. 2000).

Petitioner argues the ALJ failed to consider Petitioner's low back pain and vertigo symptoms when formulating Petitioner's RFC. Respondent argues the ALJ's step four findings were supported by substantial evidence and free of legal error, without elaboration. Brief at 9. (Dkt. 13.) First, as noted above, the determination of Petitioner's RFC is not free of legal error, because the ALJ did not properly evaluate the opinion of Dr. Dinning, a treating source. And second, a review of the record supports Petitioner's argument that the ALJ failed to consider her back pain symptoms and her vertigo when formulating Petitioner's RFC.

The ALJ's RFC determination including his finding that Petitioner could stand and walk up to four hours total during an eight-hour workday, and sit without limit. (AR 23.) His only consideration of Petitioner's vertigo was to limit climbing, industrial vibrations, and exposure to heights, despite the fact that Petitioner's prior work as a clinical therapist would not involve activities such as climbing ropes and ladders. However, his conclusion that Petitioner could sit without limit and walk up to four hours during the work day lacks substantial support in the record, given Petitioner's back pain symptoms and vertigo, which are well documented in the record.

For instance, physical therapist Chadwick Romano, who observed Petitioner during his treatment of her, noted she could not get off the floor without assistance; could not bend without support; and was a fall risk. (AR 394.) On March 10, 2014, Romano administered a balance assessment test, noting Petitioner's static sitting balance was

"fair," her dynamic sitting balance was "poor," her static standing balance was "fair," and her dynamic standing balance was "poor." (AR 399.) Romano noted Petitioner was not able to perform tests such as a tandem stance and a single limb stance, and that she scored below the normative range for all conditions of "CTSIB."[7] He noted her gait test on level surfaces was "moderately impaired," and that upon examination, she was sensitive to palpitation all over her back, neck, hips, and arms. (AR 399.) On March 17, 2014, Romano indicated Petitioner began using a walker at Romano's suggestion. (AR 414.)

Romano's treatment note dated March 31, 2014, stated Petitioner was "very unsteady at times" during treatment. (AR 408.) A treatment note during aquatic pool therapy dated March 24, 2014, stated Petitioner was having "difficulty with balance in the pool today" and needed stretching breaks to improve her tolerance to the pool exercises. (AR 410.) The ALJ made no reference to or findings about these observations from physical therapist Romano concerning Petitioner's inability to ambulate without a walker, her decreased balance and tolerance for sustained physical activity, and her balance issues while seated, when assessing her RFC.

Additionally, the ALJ included no discussion of the treatment records from the Pain Management Clinic of North Idaho, to which Petitioner was referred by Dr. Andrea Dinning because of her complaints of low back pain. On April 16, 2015, Jessica Jameson, M.D., examined Petitioner at the pain clinic. (AR 480.) Based upon an MRI of

---

[7] It is not clear in the record what the acronym CTSIB stands for. An independent search using Google's search engine indicates it stands for "Clinical Test of Sensory Interaction on Balance." *See* Ex. A attached to this opinion for search results.

Petitioner's lumbar spine performed on February 22, 2015, Dr. Jameson diagnosed Petitioner with an L4-5 broad based posterior disc bulge with left lateral annular tear and moderate central spinal stenosis and probable compression of the bilateral L5 nerve roots at L5-S1. (AR 476.) Dr. Jameson noted also that Petitioner had frequent pain flare "secondary to fibromyalgia," but her impression was that her current flare was secondary to "degenerative disk" disease. (AR 476.) The ALJ's written determination contains no analysis of Dr. Jameson's findings or their impact upon Petitioner's RFC.

By failing to properly account for all of Petitioner's medically determinable impairments, the Court finds that substantial evidence does not support the ALJ's RFC determination.

## 4.      Remand or Reversal

Petitioner asserts that the Court should reverse and remand for an award of benefits, rather than remand this matter for further proceedings. Respondent argues remand, without an award of benefits, is appropriate if the court finds error. Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Specifically, the Court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ

failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The Court should not remand solely to allow the ALJ to make specific findings regarding excessive pain testimony. *Benecke*, 379 F.3d at 593. Rather, the Court should take the relevant testimony to be established as true and remand for an award of benefits. *Id.*

Here, the ALJ failed to provide legally sufficient reasons for his findings at step three and step four. However, even giving the opinion of Dr. Dinning the consideration to which it is entitled, there are two reasons why it would be inappropriate to conclude Petitioner is entitled to an award of benefits as a matter of law. First, the ALJ failed to properly consider the evidence at step three, and provided no justification for his finding that Petitioner's impairments, in combination, would not be equivalent to a particular listing. And second, there is no testimony from the vocational expert that the limitations found by Dr. Dinning would render Petitioner unable to engage in any work. The ALJ did not ask the vocational expert at the hearing whether, given Dr. Dinning's assessment and Petitioner's testimony about her pain, she would be unable to engage in any work. (*See* AR 72 – 79.)[8] Nor did the ALJ continue to step five of the sequential process in his

---

[8] The ALJ did ask the vocational expert if Petitioner could perform sedentary work. (AR 75-77.) However, it is not clear to the Court whether, if Dr. Dinning's opinion was credited, Petitioner would be precluded from all work. Petitioner did not provide sufficient analysis to accompany her assertion that remand for an award of benefits was proper based upon the evidence in the record or the testimony at the hearing.

written opinion.

Accordingly, the proper course is to remand for further proceedings. *Harmen v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("[W]here the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: February 27, 2019

Honorable Candy W. Dale
United States Magistrate Judge